Mr. Walker. May it please the court, counsel. Good morning, your honors. My name is Lucas Walker with the State Appellate Defender's Office. I represent Mr. Daniel on this appeal. We raise one issue, that is, the trial court failed to comply with Rule 431B, when it failed to question the potential jurors as to whether they understood and accepted the four fundamental principles of law contained within the rule. It's not a complex rule. It's a fairly simple one. It's always important, but here it was especially important. After all, the fourth principle of law is that the defendant doesn't have to testify, and if he chooses not to testify, that can't be held against him. Well, the defendant chose not to testify here. But rather than ask the potential jurors whether they understood, whether they accepted the principles, the court just went through and asked them whether they disagreed or agreed with the principles. So we looked at really people v. Willington on this. Pardon me. Willington made clear that determining the jurors' level of agreement with these principles does not substitute for asking whether these jurors understand. It's arguable that it may substitute for asking whether they accept the principles, but the court simply did not inquire as to whether the jurors understood those principles here. It's a pretty plain, straightforward argument. We argue that it is a plain error, and based on the first-prong plain error, which is that the evidence presented in trial was closely balanced as to whether the defendant shoved or pushed Officer Carth. This requires this court to take a common-sense quality of analysis of all the evidence at trial within the context of the case, and we would argue it shows, when the trial evidence is looked at in its totality, that there was sufficient evidence to allow the trial to find that the state failed to meet its burden or that the state met its burden. And that's really what closely balanced evidence is about. This isn't a reasonable doubt argument. The Supreme Court has made clear numerous times at this point that the issue here is not about the closeness of sufficient evidence, or is, rather, about the closeness of sufficient evidence, not about the sufficiency of close evidence. So here... Did the state's witnesses have a better vantage point on the pushing as opposed to the defense witnesses? Well, there's several witnesses. There's three state witnesses, Officer Oldenburger, Officer Barth himself, and Officer Polich, who testified they were there when the incident occurred, and, of course, they do testify the defendant shoved Officer Barth. However, on the defense side, who presented eyewitnesses as well, there's three witnesses who testified they were right there when it occurred as well. That would be Marjorie Wilson, Marlon Wilson, Jr., and Willie, I believe that is Willie Brown, or Willie Moore. And they testified the defendant did not shove Officer Barth. Now, the other state witnesses include Officer Warrant, and Officer Warrant testified he did not see the defendant push Officer Barth, but that he thinks he saw him punch Officer Barth in the back of the shoulder at some point. So right away, there's some contradictory testimony going on on the state side. There was also two other officers that testified they did not see the defendant push Officer Barth. There were three neighbors who testified, and the state points to the neighbor testimony, in part, as evidence that this evidence was not closely balanced, and that Neighbor Collins and Neighbor Dominguez corroborated the state's theory, making it not closely balanced. But we, of course, disagree with that. Neighbor Collins testified that she was about three houses down. I believe at one point in the record that's described as four police cars' length. But three houses down, it was dusk. She couldn't identify the defendant as being any of the people involved, but she said two or three people were shoved to the ground, and those were the same two or three people that pushed the police. The problem is that contradicts the state's officer's testimony to an extent. When you look at their testimony in totality, they arrested four people, and only one was arrested for allegedly shoving anybody. That was our client here, Mr. Michael Daniel. Marlon Wilson, Jr. was arrested for charging Officer Warrant. Marcus Frazier, David Thurman, arrested for fighting each other. So there's more contradiction going on there. Neighbor Dominguez, the state points to her testimony, testified she saw one person shoving the officers. The problem is she goes on to contradict herself and says, well, there's a swarm of guys doing it. I couldn't see their backs were to me. It looked like it could have been teenage boys or older guys. She's not sure. So she's kind of all over the place. Finally, there's Neighbor Taylor. But Neighbor Taylor corroborates the defendant's theory, which is that Officer Warrant wasn't shoved, wasn't pushed. She says she saw 10 to 15 people pushing the officers back, but she clarifies that she did not see anybody physically push the officers. Rather, this is just more of this, it's a chaotic event. There's a crowd, there's yelling and shouting, and the officers are moving back because of that. Witness Dominguez, is she the first person approached by the police about loud music? I believe so. And then she refers, well, hey, my music's loud, but what about those guys down there? I believe it was Dominguez, but that's certainly the fact pattern as far as they're told to keep it down. They say, well, what about the party over there? So that's how the state's evidence pans out. There are some contradictions going on. In fact, one of the state witnesses, Neighbor Taylor, we argue corroborates the defense witness's testimony. Now, all nine defense witnesses testified that the defendant did not push Officer Barth. We've pointed out there were three that said they were right there. And the state argues a few things in regards to that. They say, first of all, well, all these defense witnesses are biased. They have a motive to fabricate. They know the defendant. They're friends, relatives, acquaintances. We will look to People v. Seve on that. People v. Seve, similar situation. State raised the same argument. Don't trust the defense witnesses here. It's not closely balanced. They all know it. But Seve pointed out, Supreme Court of Illinois, that who else is going to be witnesses for the defendant in that situation? In that case, of course, 6 a.m., defendant's home. Well, we would argue the same situation applies here, when it's a family barbecue get-together at a home where the defendant lived, Marjorie Wilson. Who else are going to be the witnesses typically there? People who know the defendant. Now, the state also argues that three of these defense witnesses had prior convictions. Can't deny that. They did have prior convictions, three of them. And that can, of course, go to the credibility of the witness. But it certainly does not mandate a finding of incredibility. Finally, the state points out, well, okay, so there are some defense witnesses that are positioned badly. You shouldn't trust their testimony. But we can go through those briefly specifically here. Ashanti Moore and Ashley Moore said they were 15 to 20 feet away, but also explicitly testified that nothing obstructed their view. Thurman said he was about 20 feet away or so. Never said anything obstructed his view, although we do acknowledge he wasn't explicitly asked that question. He did say he saw the incident. Ahmadi said she was across the alley, but said from her position she would have seen if the defendant pushed the officer. Martel Brownlee on the patio testified explicitly, nothing obstructed his view of the incident. And then James Dudley did testify that he kept his distance. We acknowledge that. He testified he didn't really see what happened prior to the defendant's arrest. But given all of that, we believe that this is really sort of a textbook case of closely balanced evidence. There was sufficient evidence presented where the trier of facts could have found that the defendant pushed Officer Barth. But there was also sufficient evidence here when to look at its totality. They could have chosen not to believe Officer Barth. Maybe he wasn't pushed at all. After all, neighbor Taylor said she didn't see any of these people actually physically push the officers. None of the defense witnesses saw the defendant push the officers. And the state's evidence was contradictory in part. So it's a pretty straightforward argument. If this court has no further questions, we would just reiterate our remedy. That is that the conviction be reversed, that, of course, the aggravated battery of a community policing volunteer, and remanded for a new trial. Thank you for your time. Thank you. Ms. Moy. You're going to need to pull the mic down just a tad. Thank you. May it please the Court. Good morning, Your Honor. Good morning. My name is Cora Moy on behalf of the people. I would like to first address the Xero principles, and then I'll move on to the closely balanced prong. Turning to the Xero principles. I'm going to pull that mic just a tad closer to you. I'm sorry? Could you pull that just a little closer to you or speak up a little bit? Just a little bit more. Thanks. Of course. Xero requires the trial court to determine whether potential jurors understand and accept the bedrock principles. And here, the trial court asked, did you agree with the principles of the law? And then subsequently asked, is there any part that you disagree with? The combination of the questions provided the jurors an opportunity and invited communications through the questions if the jurors did not understand. Today has been arguments about language. You weren't here for the very first one, I don't believe. But the issue is, did anybody say, did the trial court say, understand? No. However, there's no requirement that the word understand is used. I believe that deviation is allowed. What would be a deviation from understand? Just because you agree with something doesn't mean you understand it. Just because you disagree with something doesn't mean you understand it. You may have no concept of what it is. You can say, I agree or I disagree. Understand is a separate idea, isn't it? Correct. And in this case, contextually, the inquiry of the court's questions in this case of, is there any part that you disagree with, allows the jurors for that, for a response on an invitation for them to communicate if there was any part that they did not understand. Is Wilmington controlling in this situation? No, it is not. What's different than some of these Supreme Court cases is that here we have, not that it's determined on how many questions you ask, but the way that the trial court phrased the questions in this case separates and is distinctive from the Supreme Court cases. In Wilmington, the trial court asked, who disagrees with this fundamental principle of law? And that was the only question that was asked. In this case, again, it's the combination of the questions that this court asked, which is why there is no error. Well, he starts out by talking with the jurors, saying, I must determine that each potential juror understands and accepts each of the following principles. And then he talks about why, and he identifies them, and then he says, Okay, now I'm going to ask you individually whether you agree with those. That's not even one of the terms he used up above. What are they supposed to be doing? I believe when the trial court initially reads the principles, he says something along the lines of, It's my duty to make sure you understand and accept both the principles at the very, very beginning. And because that wasn't asked, because you have to ask them individually and in groups, I think when you look at this in context, he does ask each panel, Do you agree? And then, is there any part that you disagree with? Now, we, this court, may have led the trial judge astray in some of our earlier decisions, but the Supreme Court said otherwise, haven't they? And again, I believe this case is distinguishable in those cases. In the Supreme Court cases, usually only one of the questions is asked, and I think the phrasing here, it's different than the phrasing that had been used in other cases that had been decided by the Supreme Court of Illinois. And even if you find that there is error with the zero principles, this case isn't closely balanced. And the standard review for that is that you evaluate the totality of the evidence and conduct a qualitative, common-sense assessment of it within the context of the case. Here, the state's witnesses of three police officers were consistent in their testimony. Officers Barth, Oldenberger, and Koltage, I believe is how you pronounce his name, they all saw the defendant shove Officer Barth with both of his hands to his chest, and they all said that because of the shove, Barth took a step back because he lost his balance. Now, in looking at the defendant's witnesses, specifically the three that were standing closest to where this happened, which I believe the counsel mentioned were Marjorie Wilson, Marlon Wilson, and Willie Moore, even their testimony is slightly inconsistent. Marjorie Wilson said that the officer took the defendant to the ground, and she was nearby. She was about six feet away. However, Marlon Wilson, who was directly probably the closest in proximity, he said that Officer Barth pushed Marlon, went to grab the defendant, and three or four officers jumped on top of the defendant, and that's what he saw. And then Willie Moore testified, and he was near the car to turn down the music, so he was relatively close in proximity. He saw the defendant approach Marlon, saw the officer grab, and slammed the defendant to the ground, and he kind of goes back and says, well, I actually saw two officers. So even in the amount of officers who may or may not have pushed the defendant, that testimony is also inconsistent, which is why this case is not closely balanced because there's not two plausible versions of events. All the officers were consistent in their testimony that they saw the defendant push Officer Barth here. And in looking to the other witnesses, the other witnesses for the defendant, some of the witnesses also said, well, we didn't really see the defendant get slammed. In fact, we saw officers slam Marlon, who was the one who was nearby trying to obtain the kid, and that was from Amadi Jahi and James Dudley, who said that they saw Marlon get slammed, and it wasn't the defendant. And in fact, we had Martel Brownlee. He was on the patio, but he said that he didn't really see the officer push the defendant. It was more that the officer stumbled, and it wasn't a tackle. It was just the officer stumbled and the defendant went down with him, and that's on the record in page 849-50. So for these reasons, this case isn't closely balanced because they aren't two plausible versions and because of the inconsistencies in the testimony. They were all consistent that the defendant didn't push the officer, though, correct? Yes, but as to the actual events of what happened, that inconsistency makes this not a close case. Moreover, the verdict where the jurors found the defendant was guilty with the aggravated battery to the community policing volunteer but acquitted the defendant on the aggravated battery to the peace officer, which was when the defendant kicked Officer Wigand. And so that shows that the jurors properly weighed the credibility and the conflicts in the testimony. They clearly believed that the three officers who testified consistently that the defendant did push Officer Barth over some of the other officers' testimony that the defendant kicked the other officer. It appears they clearly didn't believe the officer that he got kicked by the defendant. He may have been kicked, but he didn't get kicked by the defendant. Correct. And so because they had properly weighted, this shows that this was not – there was no indication in the record that the jurors ever thought that this was a close case. Are there any other questions? Justice Jorgensen. Justice Burke. All right. For those reasons, we'd ask that this court affirm the defense's convictions. Thank you. Thank you. Mr. Walker, you didn't comment necessarily on the fact that we have a not guilty verdict on one and a guilty on the other. What, if anything, does that do for your case? I don't think it affects our argument at all, because ultimately this is a pretty straightforward, somewhat technical argument to begin with as far as the rule being violated. As far as the closely balanced evidence, and I can address that too, but just to get to the point of your question. As to the closely balanced evidence, our argument has been made. An acquittal on one doesn't somehow just show that the jury completely understood and accepted these principles. In fact, the whole reason that it's a requirement to make sure they do understand and accept those principles is to avoid any potential issue. So just because there was an acquittal on one count doesn't mean that they somehow were misunderstanding or not accepting certain principles in the way they came to their decision the way that they did. What about the, I think, more, as counsel addressed it, as to the closely balanced? How does it affect that particular argument? Well, these were two different acts. So the evidence related to the kicking, I think it was pretty obvious based on a reading of the facts there that if he did kick anyone, it certainly wasn't knowing it, knowing it was a police officer who was flailing around. The facts were a lot different. On the pushing, we've pretty much got three officers who were right there saying it occurred, three defense witnesses saying it didn't, along, of course, with six other, I'm sorry, and six other defense witnesses saying that it didn't. And they've got neighbors talking about the shoving and this and that. So it becomes a little bit more of a closely balanced case. And I wanted to address, while I had the time, the point that I think was made about the trial court mentioning, well, I've got to make sure that you guys understand and accept these principles, but then failing to go on and actually ask them about it. And that is Wilmington. Now, Wilmington, the trial court, told the jury, potential jury, prior to going forward, it is essential that you all understand, actually use the word understand, understand and embrace these principles. It then went on and said, do you disagree with them? The Supreme Court of Illinois said, that may have substituted for the acceptance requirement. But despite the trial court actually saying the word understand, without asking the jurors about it, it failed to comply with the rule on that requirement. So there really is no bootstrapping. The court can't just say what it needs to do and say what the jurors need to understand and accept without actually asking the jurors about it. As far as counsel's point about certain minor inconsistencies, well, she saw four officers tackling where he stumbled here and things like this. This was a chaotic event. There's no doubt about it. There was yelling. There was shouting. Certain people saw certain things. Certain people didn't. Neighbors had trouble telling what was going on. We would look to a quote from people who said, again, Seve is pretty instructive here, where it said, minor inconsistencies cloud the testimony on both sides, but neither the prosecution nor the defense counsel that morning's events were fanciful. We would argue that it's a similar situation here. These events aren't fanciful. Either the officer was shoved or he wasn't. And he could have been or he could not have been. And given the fact that everything was so chaotic, at one point they're being pushed back, but not physically pushed. There's yelling. There's shouting. There's a fight between Thurman and Frazier. Mr. Thurman wants his son back. They're trying to talk to him about his son. It's okay. He stays. Now it's not. They're grabbing his son out of a vehicle. It's hectic. So neither story is really fanciful at all. It is closely balanced evidence. Do we have any extrinsic corroborating evidence here? Is anybody bleeding? Is anybody, you know, we can see that somebody has been injured, not necessarily by whom, but can we see that somebody's been injured? No. There's no corroborating evidence. There's, well, we would point, of course, extrinsic evidence rather, maybe. But we did point to neighbor Taylor as being corroborative, because that is a state witness who testified, yeah, 10 to 15 people pushed the officers back, but it was not physically pushing them back. So with that, unless there are any other questions, we would just reiterate our request for remedy, the reversal of the aggravated battery to a community policing volunteer conviction and a remand-free trial. Thank you for your time. Thank you, counsel, for your arguments. We will take the matter under advisement. I believe now we do stand adjourned for today. Thank you.